**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ENERGY POLICY ADVOCATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )　　Civil Action No. 22-1312 (APM) |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff was forced to file this suit under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. ("FOIA"), after the SEC refused to comply with its statutory obligations and made clear its intent to indefinitely withhold the requested documents. Although Plaintiff agrees with the SEC's statements in its Motion for Summary Judgment and in the accompanying Statement of Undisputed Material Facts that the agency has now produced many of the records that were previously at issue in this case[1] and that the documents that remain are comparatively few in number (ECF No. 20-1 at ¶¶9-10), the Commission has consistently refused to produce segregable factual information in these last remaining records and/or is withholding what is largely and inherently purely factual information in calendar entries, providing only the most cursory assertion of any foreseeable harms that might come from releasing the withheld information. But an agency's hopes for secrecy about basic facts or fears of embarrassment are not among the statutory exemptions that would allow it to withhold records under FOIA, the very purpose of which is to act as a "check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978). By failing to release, e.g., purely factual information and by flouting the fundamental requirement to analyze foreseeable harm as it relates to the documents at issue in this case, rather than generalize about same, the agency remains in violation of FOIA.

There is no genuine issue of material fact that the allegations raised in the Complaint are in any way inaccurate, or that the agency complied with FOIA before Plaintiff sought relief in the

---

[1] Regardless of the Court's ruling on the remaining documents in dispute in this Motion for Summary Judgment, Plaintiff respectfully submits that, by having compelled release of the information it has, it will have substantially prevailed in this litigation and that it will ultimately be entitled to an award of attorney's fees. Plaintiff respectfully submits that it is premature, in the absence of a judgment on the merits, to file such a Motion at this time, and therefore simply notes in this filing that the issue remains for a future adjudication. See Fed. R. Civ. P. 54 (d).

courts. Even after this litigation was joined and the issues were considerably narrowed on summary judgment, the agency has failed to submit any evidence, admissible or otherwise, which would allow this Court to entertain or uphold the agency's claims that there are any applicable exemptions to disclosure. This case fits the mold that "FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012). At the summary judgment stage, "the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA." *Buzzfeed, Inc. v. U.S. Dep't of Homeland Sec.*, 610 F. Supp. 3d 139, 144 (D.D.C. 2022). This is a burden the SEC seemingly cannot meet about much of the withheld information but regardless has made little to no effort at all to meet, even at this late stage and following many months of productions; the agency simply has not complied with FOIA.

The SEC has violated the Freedom of Information Act by heavily redacting numerous entries of what is by its very nature almost certain to be purely factual information (*infra*), to include even the subject matter of meetings on a Commissioner's calendar declaring it to be deliberative and, *ipse dixit*, a threat to cause harm should the public learn such subject matter or other information. Because the SEC's redactions are so extensively improper, and to shed light on the importance of the documents requested and the necessity for releasing them over the SEC's risible assertions that release will cause "foreseeable harm," even in the absence of anything approaching a particularized analysis of such harm, Plaintiff briefly recounts here the specifics and context of its request and the SEC's response. Plaintiff then turns to the merits, including why the SEC has not satisfied its FOIA obligations and why the information it continues to withhold is improperly withheld.

2

## FACTUAL AND PROCEDURAL BACKGROUND

The broader factual context in which Plaintiff's FOIA request was filed is necessary to explain the meaning of the records sought, the significance of the request, and the underlying motives of the agency in scorning FOIA's demands. "[E]vidence of agency bad faith" is recognized as probative of the agency's noncompliance. *See Jud. Watch, Inc. v. Dep't of Just.*, 619F. Supp. 3d 69, 75 (D.D.C. 2022).

### 1. The Plaintiff's FOIA Request, and the Reasons it Was Filed

Plaintiff submitted its request to assess the SEC's activities in certain highly controversial matters, including transforming the "independent commission" into a "climate" agency in close coordination — as Plaintiff has now shown — with the White House, and also pressure-test the sufficiency of the SEC's claims that it publicly posts its commissioners' calendars — which, Plaintiff has now shown, are posted months after the fact in part due to being highly sanitized to remove details of controversial details, for example, a "Call with Hillary Clinton" on Chairman Gensler's official schedule (which was scrubbed from the public version), or that Chairman Gensler's call with investor and major political donor George Soros was to consult on an op-ed Soros subsequently placed in the *Wall Street Journal* urging Congress pass legislation to give the SEC more authority.[2] On this count, Plaintiff has fulfilled FOIA's purpose here, which of course does not excuse improper withholdings of further information related to, e.g. the "subject matter" of, for example, Chair Gensler's "Climate [      b5      ] rule discussion--WebEx", "Climate rule [ b5      ]." See Exhibit C, pp. 2, 6.

---

[2] See, e.g., Thomas Catenacci, "Biden official hid info about meetings with George Soros, Hillary Clinton, Nancy Pelosi from public," FoxNews.com, December 12, 2023, https://www.foxnews.com/politics/biden-official-hid-info-meetings-george-soros-hillary-clinton-nancy-pelosi-public.

**2. The Instant FOIA Case**

At this stage, the SEC has produced the vast majority of the documents that Plaintiff originally sought. Yet it remains firmly in noncompliance with the Act.

The SEC's violations of the statute are laid bare first by its *Vaughn* Indices lacking sufficient detail to support either its redactions or other withholdings, or the idea that there is no reasonably segregable information in these records. The SEC's justifications for why the records are allegedly covered by FOIA's Exemption 5 are boilerplate and repetitive (and, in numerous instances, facially highly questionable). Thus, the SEC fails to establish the withheld information is covered by the deliberative process privilege articulated by FOIA's Exemption 5. Further, and separately, a freestanding reason why the SEC's withholdings are invalid is that it has not shown that disclosure of any of the records, in whole or in part, would cause harm, as the 2016 FOIA Amendments require for withholding even exempt information.

In the instant matter, the SEC redacted emails (as set forth and itemized at ECF No. 20-4) and calendar entries (as set forth and itemized at ECF No. 20-5). Yet with respect to each of the remaining redactions, SEC has not met its undeniable burden to show and support that it produced all reasonably segregable information responsive to Plaintiff's FOIA requests.

## LEGAL STANDARD

FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991) (cleaned up). Under FOIA, an agency is obligated to demonstrate that "each document that falls within the class requested" has either "been produced" or is "exempt." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). The burden never shifts to the plaintiff at any stage. *Nat'l Sec. Counselors v. CIA*, 320 F. Supp. 3d 200, 209 (D.D.C. 2018)

In a lawsuit under the Freedom of Information Act, the "burden is on the agency to demonstrate, not the requester to disprove, that the materials sought … have not been 'improperly' 'withheld.'" *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989).

"The burden is on the agency to prove de novo in trial court that the information sought fits under one of the exemptions to the FOIA." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). Because of FOIA's presumption in favor of disclosure, exemptions are "narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982); *accord Dep't of Air Force v. Rose,* 425 U.S. 352, 360–61 (1976); *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008).

Moreover, "Under the FOIA Improvement Act of 2016, the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." *Reporters Committee v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021), *citing* 5 U.S.C. § 552(a)(8)(A)(i)(I). This "reasonable foreseeability of harm" standard requires the withholding agency to provide "context or insight into the specific decision making processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019). That is, the agency must demonstrate the foreseeability of harm, as well as the existence of an otherwise exempt exchange.

An agency's summary-judgment declarations to support these withholdings must contain "reasonable specificity of detail rather than merely conclusory statements," that "are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013). A declaration must therefore "provide detailed and specific information demonstrating that material withheld is logically within

the domain of the exemption claimed." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998), as amended (Mar. 3, 1999).

Even when an agency carries its burden to demonstrate that *some* material may be exempt, the agency nevertheless has a duty to "segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii). This duty is so essential that even if the FOIA requester does not challenge the agency's failure to release nonexempt information, "the District Court ha[s] an affirmative duty to consider the segregability issue *sua sponte*." *Transpacific Policing v. U.S. Customs*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

I.   **Summary Judgement is Inappropriate Because Defendant's *Vaughn* Index Provides Only Boilerplate, Repetitive, and Insufficiently Detailed Assertions of Why the Records are Privileged and Covered by Exemption 5.**

Defendant has not met a basic, threshold requirement for a *Vaughn* Index, which requires presenting how and why the withheld information is exempt under a claimed privilege. Nor do Defendants' affidavits cure the deficiencies that are apparent on the face of the *Vaughn*. The Court should therefore either reject SEC's claimed exemptions, or alternatively should conduct an *in camera* review to assess for itself whether the withheld information is properly exempt.

The SEC asserts that the email records it has identified are exempt as deliberative materials because they were exchanged between the SEC, other agencies, and the White House as part of its deliberations about "policymaking focus and development, regulatory activity, and executive action." ECF No. 20-6 at p. 15. With respect to each of its withholdings, the SEC has the burden of demonstrating each redaction and portion of a redaction is appropriate for each and every record and portion of a record. Placing to the side the numerous parts of withholdings in many email documents the Plaintiff challenges, by withholding information, particularly subject matters of numerous meetings appearing on Chairman Gensler's calendar, the SEC presumptively

shields more than truly "deliberative" information relating to agency decisions and shared between covered individuals from view. By shielding the substance of the calendar entries in part or *in toto*, the SEC inherently has hidden factual and nondeliberative material from view. This Court should therefore reject SEC's claims and hold that it has failed to carry its burden of proof.

**A)  The SEC has Misapplied Exemption 5.**

Defendant has withheld the substance of various calendar entries (specifically, the subject matter of meetings) and substantial portions of numerous emails citing the Deliberative Process privilege The SEC is wrong to do so for at least three fundamental reasons:

First, to the extent that the subject of a meeting or other information contained in the records at issue is purely factual in nature, it cannot be deliberative or withheld. "Factual material that does not reveal the deliberative process is not protected by this exemption." *Morley v. CIA*, 378 U.S. App. D.C. 411, 430, 508 F.3d 1108, 1127 (2007) (internal citations omitted). Second, because the SEC has not established that the redacted calendar entries themselves cover "deliberations" or similar activities relating to final agency decisionmaking or policy, the agency cannot establish that Exemption 5 protects the information in any fashion. Third, to the extent that Exemption 5 or any other doctrine or privilege ever applied to the requested records, any claim has been waived by sharing the email (or calendar) information at issue with parties outside the deliberative relationship.

**i)      The SEC Has Not Established Deliberative Process Privilege Applies.**

The SEC cannot establish that Exemption 5 applies to the records at issue in this case in the first instance.

"Recommendations from subordinates to superiors lie at the core of the deliberative-process privilege," *Amadis v. United States Dep't of State*, 971 F.3d 364, 370 (2020), but the SEC has

not bothered to explain who was making recommendations to whom in this case, much less whether the "recommenders" were inside or outside the agency or what the relevant final agency decision was. See *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 512-13 (2010) (for the proposition that at an independent agency, the Commissioners are collectively the agency "head" to whom recommendations are made). Further of course the SEC has not revealed how the calendar entries, of all items, reflect recommendations or give-and-take. A record is not "deliberative," and thus is not covered by deliberative process privilege, unless "it 'reflects the give-and-take of the consultative process." *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)). Indeed, it appears that many of the alleged "deliberations" were apparently between the SEC and the White House. Even leaving aside whether the White House is capable of engaging in deliberations within the meaning of Exemption 5 with respect to agencies generally, or if discussions or the subject or existence thereof with the White House are somehow uniquely privileged, the SEC purports to be an independent agency that does not take direction from the White House. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 383 U.S. App. D.C. 119, 138, 537 F.3d 667, 686 (2008) (for the proposition that the SEC is an independent agency). Perhaps because "Independent agencies lack the ordinary constitutional checks and balances that come from Presidential supervision and direction… independent agencies have traditionally been structured as multi-member bodies where the commissioners or board members can check one another." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 426 U.S. App. D.C. 100, 129-30, 839 F.3d 1, 30-31 (2016). Query then what role in the deliberations of such an independent agency – checked only by its own members' desire to compete with and check one another's power – the White House might have.

8

Even assuming, *arguendo*, that the emails at issue in this case reflect discussion about issues generally within theSEC's purview, that does not create the grounds for Exemption 5 to apply. Even internal discussions simply are not privileged at all if they are "peripheral to actual policy formulation," *Ethyl Corp. v. USEPA*, 25 F.3d 1241 at 1248, or if they apply existing policy to newly arising facts.  Even internal evaluations of agency policy that are far more connected to policy formulation than a mere topic such as a specific subject matter of a "climate [b5] rule" meeting can be beyond the reach of the deliberative-process privilege, no matter how chilling their disclosure might be. See *Vaughn v. Rosen*, 523 F.2d 1136, 1143 (D.C. Cir. 1975) (finding an agency's efforts to evaluate and change its personnel policies, rules and standards too amorphous to qualify as a process for the purposes of the deliberative process privilege).

Moreover, some policy decisions are just too trivial to be the "stuff" of deliberative process privilege. See *Hennessey v. US AID*, No. 97-1113, 1997 WL 537998, at *6 (4th Cir. Sept. 2, 1997) (agency contract dispute was not the "stuff" of deliberative process privilege). Defendant's explanation of its withholdings gives no hint as to what specific policy decisions – as opposed to generalized topics — the redacted information might relate to, and whether they have any real significance. It is not enough that a redaction relates to a proposed policy (or "goal" or "priority") without being more specific. As the D.C. Circuit explained in *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022), "Assessing whether a record is pre-decisional or deliberative necessarily requires identifying the decision (and the associated decisional process) to which the record pertains. An agency invoking the deliberative-process privilege thus must 'establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" Thus, particularly though not exclusively when examining the calendar redactions, Defendant's Exemption 5 claims are too conclusory, even if one very dubiously

assumes that a topic or date can be redacted because it is related to a policy decision. To be sure, the deliberative-process privilege may apply even when the agency never reaches a final decision, or the decisionmaking may still be ongoing. That could happen, for instance, if an idea "dies on the vine" or meets a "dead-end." *Sierra Club*, 141 S. Ct. at 786. But to carry its burden in such a situation, the agency still must tie the withheld records to a decision-making process, even if that process did not ultimately result in a decision or is still ongoing. *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022).

But Defendant, while alleging based on inadmissible hearsay or on a basis that is entirely unclear from the cursory declarations, that some of the redacted or withheld information relates to the agency's decision to "explore possible regulatory and executive actions," Tallarico Decl. at ¶ 13, does not describe what type of decisionmaking process they relate to. This is insufficiently detailed to meet the agency's burden. Its description of the redacted meeting topics is vaguer than the descriptions courts have found too vague, such as saying that withheld information relates to "high tech policy issues," *ICM Registry, LLC v. U.S. Dept. of Commerce*, No. 06-cv-0949 (JR), 2007 WL 1020748, *6 (D.D.C. March 29, 2007), "wilderness issues," *Wilderness Society v. Dep. of Interior*, 344 F.Supp.2d 1, 12 (D.D.C. 2004), "environmental testing and safety measures," *Judicial Watch*, 297 F.Supp.2d at 264, or "HLCG information sharing principles." *Electronic Frontier Foundation v. U.S. Dept. of Justice*, 826 F.Supp.2d 157, 168-70 (D.D.C. 2011). Even escribing records as being related to an unspecified policy proposal is insufficient, because it contains essentially no information. See *FPL Group v. IRS*, 698 F.Supp.2d 66, 90 (D.D.C. 2010).

Yet the SEC tells this Court far less, except that even the subjects of deliberations are themselves deliberative in nature.

**ii)       SEC has Waived any Exemption 5 Protections through its Conduct.**

Assuming, *arguendo*, that Exemption 5 ever applied to the records at issue in this case, the SEC voluntarily waived the protection of Exemption 5 by sharing the underlying documents with the White House, even as it simultaneously claims to exist as an independent agency not subject to the president's direction and control.

Deliberative process privilege is waived if an agency shares communications outside the deliberative relationship. See *Department of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 9 (2001) (tribe's communications with agency were not covered by Exemption 5, even where agency labeled tribe as consultant and cited need for confidentiality; "'the communication must be 'inter-agency or intra-agency.' 5 U. S. C. § 552(b)(5)," not "communications with outsiders"). To show communications are "intra-agency" or "inter-agency" for purposes of FOIA, and thus potentially privileged under Exemption 5, an agency must list the "names and affiliations of all senders and recipients," even "for documents that" are described by the agency as "purely internal." *People for the American Way Foundation v. U.S. Department of Educ.*, 516 F.Supp.2d 28, 30, 41-42 (D.D.C. 2007) (ordering agency to "submit a new Vaughn index" including "the names and affiliations of all senders and recipients"; even "for documents that are purely internal to [the agency] the Vaughn index shall include the names and affiliations of all senders and recipients for each communication in addition to an explanation of why each document is predecisional and deliberative.").

Defendant's conclusory description of the communications is not controlling. Agencies sometimes characterize communications which do not meet the relevant legal test as internal to the executive branch, even though courts deem such communications not "intra-agency" and thus not covered by exemption 5. See, e.g., *CEI v. OSTP*, 161 F.Supp.2d 120, 128, 134-35 (D.D.C.

2016) (agency claimed drafts "remained internal to the Executive Branch," but court concluded that the consultant they were exchanged with was outside the Executive Branch for purposes of Exemption 5, waiving any deliberative process privilege claim; consultant was not "enough like the agency's own personnel to justify calling [her] communications `intra-agency,'" and so the draft pages were "not covered by the deliberative process privilege and cannot be withheld under Exemption 5.").

### C)  The SEC's *Vaughn* Index is Deficient

Further, the *Vaughn* Index entries do not in fact describe why the withholdings are exempt, failing to satisfy a key requirement for a *Vaughn* Index. The standard requires "a detailed description…of the entire content of each withheld agency record or deletion from a released agency record" as well as "detailed justification statements giving particularized and specific justifications for each claim of exemption …[which] shall: …(d) contain specific factual or evidentiary material to support each element of a claimed exemption [and]… the specific injury to [the agency] which release would allegedly create; and (h) why the public interest does not favor disclosure." See, e.g., *Coastal Corp. v. Dept. of Energy*, 496 F.Supp. 57, 59 (D. Del. 1980). The indices submitted by Defendant are anything but "detailed" and make only conclusory assertions as their explanations for the claimed exemptions. In each entry, the SEC merely states that the communications meet the standard rather than describing how they do so.

The SEC's broad and repetitive reasons for withholding, through redactions and with numerous documents withheld in a single category of the same *Vaughn* entry (see, e.g., ECF No. 20-5, Entry 2), and without giving enough detail about the content to understand meaningfully why the documents were withheld, are facially inadequate. Without knowing which kind of information is in a redaction, the Court is hampered in assessing the validity of the claim, and

the plaintiff is prevented from highlighting the weakness of even the weakest such claims. See *Campaign for Responsible Transplantation v. FDA*, 219 F. Supp. 2d 106, 116 (D.D.C. 2002) ("Without a proper *Vaughn* index, a requester cannot argue effectively for disclosure and this court cannot rule effectively.").

Moreover, neither declaration establishes the withheld content is deliberative. The Tallarico Declaration states only the general topics of purported deliberations. The *Vaughn* Index ought to describe in more detail the pre-decisional deliberations to which this language relates, but barely makes an effort to do so in any way other than plugging in the name or reference to a rule to which the boilerplate refers. The declarant does not explain how the documents meet the standard, nor does he offer any factual basis for the assertions in the Vaughn log. Again: SEC's mere assertions of the applicability of an exemption do not suffice.

The agency's *Vaughns* must contain far more information than these two do if SEC hopes to carry its burden to establish any of its claimed exemptions. "An agency invoking the deliberative-process privilege…must 'establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'…The agency… 'bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process.'" *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022) (citations omitted). SEC's short *Vaughn* descriptions do not come close to meeting this burden, which logically as a practical matter should be a heavier lift as the withholdings stray into the sort Defendant shields here—subject matters of meetings being purportedly deliberative are a stark example, particularly when we learn as Plaintiff did in this matter how the SEC already sanitizes calendars before posting them for public inspection. Indeed, SEC seems to substitute an *assertion of deliberation* for requisite facts that would establish deliberation. The character of the

decisions in question is not mentioned in any of the *Vaughn* entries. Neither do any of them describe the deliberative process or the role of the documents in question, other than to use generalities or topics. ECF 20-4, 20-5. These generalities could apply to nearly any document prior in time to proposed legislation or litigation. The extent to which the documents are actually reflective of a deliberative process is impossible for the court to assess without additional, non-generic, detail.

The bare assertion in the Tallarico Declaration at ¶ 13 *et seq*. that release of the records at issue at issue (see, *infra*) would somehow cause harm does not contain sufficient detail to show they are privileged. Not all agency decisions are covered by the deliberative process privilege. *See, e.g., Elkem Metals Co. v. U.S.*, 126 F.Supp.2d 567, 576-77 (C.I.T. 2000) (privilege did not protect "a draft of the ITC's issuance of a schedule for the conduct of its changed circumstances reviews," or agency's "draft of a proposed work schedule" or "another proposed work schedule"; items were "not protected by the deliberative process privilege," especially since "disclosure" of "scheduling information" would not "discourage candid discussions within the agency" and such information did not "reflect the give-and-take" of the agency's "decision-making process"); *Hennessey v. U.S. Agency For Intern. Development,* 121 F.3d 698, 1997 WL 537998, *5 (4th Cir. Sept. 2, 1997) (even "construction scheduling dispute" that gave rise to legal claim against agency was not shielded by deliberative-process privilege because it did "not bear on a policy-oriented judgment of the kind contemplated by Exemption 5"; even if a "decision" regarding such a matter "can be regarded as a 'policy,'" it is not the "'stuff' of the deliberative process privilege" if it is at the "very outer limits" of what is a policy). Without a sufficiently detailed *Vaughn* index, it is impossible for Plaintiff to know if the cited exemptions apply, or are as they appear on their face to be merely recitations of the standard. And the agency's affidavits accompanying the *Vaughns* shed no

additional light; the analysis is so generalized that it can likely be swapped in, verbatim, in any SEC FOIA case. The declarants nowhere engage in specific analysis with reference to specific documents at issue in this case or specific harms that might be foreseeable from release.

Defendant's *Vaughn* Index entries are far less detailed than the descriptions courts have found too lacking in detail to support a deliberative-process privilege claim, for example saying that withheld information relates to "high tech policy issues," *ICM Registry, LLC v. U.S. Dept. of Commerce*, No. 06-cv-0949 (JR), 2007 WL 1020748, *6 (D.D.C. March 29, 2007), "wilderness issues," *Wilderness Society v. Dep. of Interior*, 344 F.Supp.2d 1, 12 (D.D.C. 2004), "environmental testing and safety measures," *Judicial Watch,* 297 F.Supp.2d at 264, or "HLCG information sharing principles." *Electronic Frontier Foundation v. U.S. Dept. of Justice*, 826 F.Supp.2d 157, 168-70 (D.D.C. 2011).  Similarly, SEC's *Vaughn* indices simply claim the covered documents are related to "policy areas" or "climate-related conversations," among other things.

If any of the withheld information is related to the policy in some broad and amorphous sense, as opposed to a specific policy being deliberated, this Court cannot justify the withholding. "We reemphasize the narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why. The exemption is to be applied "as narrowly as consistent with efficient Government operation." *Coastal States Gas Corp. v. Dep't of Energy*, 199 U.S. App. D.C. 272, 617 F.2d 854, 868 (1980). (internal citations omitted). The Court should hold that SEC has failed to carry its burden.

## II.    Defendant Does Not Show the Harm Needed to Withhold or Redact the Responsive Records it Does Acknowledge.

Assuming, *arguendo*, that the SEC had met the burden to establish that Exemption 5 applied in the first instance, it nevertheless does not "concretely explain how" and "why actual harm would foreseeably result from release," which is an independent requirement under the 2016

FOIA Amendments before material otherwise privileged under Exemptions 5 be withheld. *Reporters Committee v. FBI*, 3 F.4th 350, 369-71 (D.C. Cir. 2021), citing 5 U.S.C. § 552(a)(8)(A)(i)(I). SEC instead makes general statements, none of which adequately describe the harm that would result from release or even analyze it with reference to this particular case and the particular documents at issue, and so all of which fail to meet SEC's burden.

"Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld. Agencies cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment" to withhold information. Nor may the government meet its burden with "generalized assertions[.]" *Reporters Comm. for Freedom of the Press v. FBI*, 453 U.S. App. D.C. 50, 69, 3 F.4th 350, 369 (2021)(internal citations omitted).

The SEC's *Vaughn* indices do not allege with reference to specific documents or specific facts that release of the identified record(s) would reasonably foreseeably cause harm or have any chilling effect on agency deliberations or how or why. *See* ECF Nos 20-4 and 20-5.

Similarly, the declarations do not adequately establish the potential for harm. The Tallarico Declaration, ECF No. 20-3, offered "to explain the harm that would occur should the withheld information be released," contains only three mentions of the word "harm" (once at ¶ 2 announcing this purpose, and twice in ¶ 24) and absolutely no references to how the agency balanced any calculation of its own harms against any public interest in disclosure before or during its "foreseeable harm" analysis.[3] Indeed, the declarant seems to have viewed his foreseen harms in a

---

[3] The Tallarico Declaration appears to be dispensed with only the most minor of edits in numerous cases. Undersigned counsel noted the exact same number of uses of the word "harm" in roughly the same locations in *New Civil Liberties Alliance v. SEC*, Case No. 1:22-cv-3657,

vacuum, without any corresponding calculation of public benefit from disclosure, and from 30,000 feet, without any specific reference to harms from the documents at issue as opposed to harms from release of documents under FOIA generally. The Hyde-Michaels Declaration adds no relevant information relating to this analysis contained in the Tallarico Declaration,

With no reasonably articulated or plausible ill effect, it is hard to fathom how release of the withheld information in the correspondence here, which SEC has already publicly acknowledged reflects its own decision to take direction from the Executive Branch that it was deliberately insulted from through a thoughtful Congressional design fostering agency independence, would or could cause further harm here (or indeed, how disclosure would not benefit both the agency and the public by providing assurances that the agency's interactions with the White House do not violate the Congressional scheme by which SEC's Commissioners are alleged to perform their own checks and balances independent of the more overtly political members of the Executive Branch). Defendant never addresses this beyond general, boilerplate conclusory statements. Embarrassment is not an exemption to FOIA, and the fact of embarrassing facts potentially being obscured only enhances the imperative for public release.

How would the release of information relating to Executive Branch priorities cause public confusion or interfere with SEC's duties? The declarants do not explain how, and simply assert that it will as if such a truth were somehow self-evident. Plaintiff, by contrast, notes that the priorities of the executive branch are routinely discussed openly, including in stump speeches, in State of the Union addresses, and in media interviews, all without apparent ill effect. Plaintiff cannot speculate as to SEC's fears or its basis, and this Court should similarly refrain and hold

---

ECF No. 17. That case involved entirely different records and entirely different circumstances, but Mr. Tallarico's perception of foreseeable harms seems not to have adapted to the circumstances of this particular case.

SEC to its burden of proof. The D.C. Circuit in *Reporters Committee* found "wholly generalized and conclusory" an agency exemption claim that described at greater length than defendant's *Vaughn* Index or Tallarico Declaration how disclosure of whether a now-proposed rule was going to include or address a particular matter "would chill full and frank discussions between agency personnel and decision makers regarding a decision." *Reporters Committee v. FBI*, 3 F.4th at 370. It found insufficiently detailed the statement that:

> Disclosure … would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

Defendant's explanation for why release of the redacted material would allegedly chill the staff's ability to do their work is also far shorter, less detailed, and less unequivocal than the explanation found both "vague" and "insufficiently specific" in *Project on Government Oversight v. DHS*, Case No. l:18-CV-2051-RCL (Feb. 20, 2023), Memorandum Opinion, at pp. 16-17, https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2018cv2051-62, even though the defendant in that case explained in more detail than the case at bar that disclosure would "severely undermine" its "ability" to "investigate" violations of civil rights and civil liberties.

In that case, the agency stated, in far more detail (at pg. 17) that:

> Court-ordered disclosure of the information would severely undermine the Department's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process outlined above to offer uninhibited opinions and recommendations on the matters at issue. Without the continued assurance of confidentiality, CRCL's expert consultants would not provide the Department with the meaningful information it needs to properly investigate civil rights complaints. Maintaining the confidentiality of these types of predecisional and deliberative communications is critical for the Department to carry out its mission…

Disclosure of this information would chill the free and frank exchange of ideas and recommendations at DHS, including between CRCL's expert and CRCL, and between CRCL and the affected DHS component agencies that have been the subject of complaints that require investigation. Release of the information would severely undermine the Agency's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process ... to offer uninhibited opinions and recommendations on the matters at issue.

Defendant's assertion of foreseeable harm is also far less detailed and specific than that found "insufficiently specific" in *Project on Government Oversight v. DHS*, Case No. l:18-CV-2051-RCL (Feb. 20, 2023), Memorandum Opinion, at pg. 18, https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2018cv2051-62, where the agency said:

Moreover, release could cause unnecessary public confusion .... [T]he Reports contain the experts' preliminary findings and recommendations. The Reports contain the experts' unverified observations of first impression. For any number of reasons, the Department may not necessarily agree with, or adopt the experts' findings or recommendations. In the Department's view, release of the experts' preliminary findings and recommendations poses a substantial risk of confusing the public as to any eventual final actions of the Department concerning the complaints in question, or the reasons for them.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be denied.

Respectfully submitted this the 7th day of November, 2023,

*/s/ Matthew D. Hardin*
Matthew D. Hardin, D.C. Bar # 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
(202) 802-1948
MatthewDHardin@gmail.com

*Counsel for Plaintiff*