**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ENERGY POLICY ADVOCATES, <br><br> Plaintiff, <br><br> v. <br><br> SECURITIES AND EXCHANGE COMMISSION, <br><br> Defendant. | No. 1:22-cv-01312-APM |

**REPLY MEMORANDUM IN SUPPORT OF**
**SEC'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................... 1

    A.    The SEC properly withheld information under FOIA Exemption 5 ...................... 1

        1.    The deliberative process privilege protects the withheld information. ........ 1

            a.    The SEC properly withheld information from its correspondence with the White House and other federal government agencies under the deliberative process privilege. ......................................... 2

            b.    The SEC properly withheld information from Chair Gensler's calendar under the deliberative process privilege. .......................... 5

        2.    The SEC has not waived protection of withheld information in correspondence with the White House. .................................................... 7

        3.    The SEC's *Vaughn* Indices sufficiently describe the information withheld under the deliberative process privilege. .................................... 8

        4.    The SEC sufficiently demonstrated the foreseeable harm that would necessarily occur should the withheld records be released. ...................... 11

    B.    No material facts are in dispute. ........................................................ 16

III.    CONCLUSION .......................................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Am. Oversight, Inc. v. Dep't of Health & Human Servs.*, No. 17-827(EGS/DAR), 2022 WL
 1719001 (D.D.C. May 27, 2022) ..................................................... 4

*Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910 (D.D.C. Sept. 28, 2021) ............. 11

*Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490 (D.D.C. 2015) .......................................... 17

*Cause of Action Inst. v. U.S. Dep't of Commerce*, 513 F. Supp. 3d 116 (D.D.C. 2021) ............... 3

*Chilivis v. SEC*, 673 F.2d 1205 (11th Cir. 1982) ............................................................... 7

*Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*, 45 F.4th 963 (D.C. Cir. 2022) ...................... 7

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585 (D.D.C. Nov. 21, 2022) ........ 14

*Coastal States Gas Corp. v. DOE*, 617 F.2d 854 (D.C. Cir. 1980) ............................................. 11

*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120 (D.D.C. 2016) ..... 8

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ........................... 7

*Ecological Rights Found. v. U.S. EPA*, 541 F. Supp. 3d 34 (D.D.C. 2021) ................................. 17

*Elec. Frontier Found. v. U.S. DOJ*, 826 F. Supp. 2d 157 (D.D.C. 2011) ...................................... 5

*Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084 (D.D.C. May 22,
 2018) ....................................................................................... 6, 18

*Elkem Metals Co. v. United States*, 224 Ct. Int'l Trade 1395 (2000) .......................................... 10

*Energy Pol. Advocates v. SEC*, No. 1:22-cv-01497 (TNM), 2023 WL 6976071 (D.D.C. Oct. 23,
 2023) ....................................................................................... 1, 10

*Energy Pol. Advocates v. U.S. Dep't of State*, No. 1:19-CV-03307 (TNM), 2023 WL 4198200
 (D.D.C. June 27, 2023) ................................................................. 11, 13

*Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241 (4th Cir. 1994) ........................................................... 6

*FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66 (D.D.C. 2010) ........................................................... 5

*Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010) ................................................................... 2, 3

*Hainey v. U.S. Dep't of Interior*, 925 F. Supp. 2d 34 (D.D.C. 2013) ........................................... 17

*Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 35 (D.D.C. 2022) ................................................. 10

*Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998 (4th Cir. 1997) ...... 7, 11

*Humane Soc'y of the United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d
    34 (D.D.C. 2019) ...................................................................................................................... 17

*ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR), 2007 WL 1020748 (D.D.C.
    March 29, 2007) ....................................................................................................................... 4

*Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1 (D.D.C. 2014) ................. 2

*Judicial Watch, Inc. v. DOE*, 412 F.3d 125 (D.C. Cir. 2005) .................................................... 2, 3

*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252 (D.D.C. 2004) ............................. 4

*Keeping Gov't Beholden, Inc. v. U.S. DOJ*, No. CV 17-1569, 2021 WL 5918627 (D.D.C. Dec.
    13, 2021) ................................................................................................................................. 14

*Lawyers' Comm. for C.R. v. OMB*, No. 18-645 (EGS), 2023 WL 3433978 (D.D.C. May 12,
    2023) ......................................................................................................................... 10, 13, 14

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) ................................. 2, 13

*People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28 (D.D.C. 2007) ......... 8

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1 (D.C. Cir. 2016) ..................................... 3

*Project on Gov't Oversight v. DHS*, No. l:18- CV-2051-RCL, 2023 WL 2139380 (D.D.C. Feb.
    21, 2023) ................................................................................................................................. 15

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194 (D.D.C. 2007) ............... 6

*Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021) ...................... 15

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) .......................................... 7

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ........................................................ 6

*Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) ................................ 4

*Wolfe v. Dep't of Health & Human Serv.*, 839 F.2d 768 (D.C. Cir. 1988) .................................... 4

**STATUTE**

5 U.S.C. § 552(a)(8)(A)(i) .......................................................................... 14

## I.     INTRODUCTION

Defendant U.S. Securities and Exchange Commission ("SEC") submits this reply in further support of its motion for summary judgment concerning the withholdings made from certain records responsive to two Freedom of Information Act ("FOIA") requests at issue in this litigation.

In its Opposition, Plaintiff asserts that FOIA Exemption 5 does not protect the information the SEC has withheld, that the SEC's *Vaughn* Indices are insufficient, and that the SEC did not demonstrate that it reasonably expected that disclosure of the withheld information would harm the SEC's interests in having free discussions in the course of developing policy. *See* Opposition, ECF 21 ("Opp."), at 6-19.  Plaintiff's arguments, however, are belied by the record and relevant case law.  Plaintiff also fails to assert any genuine issue of material fact.

Because the SEC has appropriately withheld information under FOIA Exemption 5, the Court should grant the SEC's motion for summary judgment.

## II.     ARGUMENT

### A.  The SEC properly withheld information under FOIA Exemption 5.

#### 1.  The deliberative process privilege protects the withheld information.

The SEC has met its burden to justify its withholdings under the deliberative process privilege embedded in Exemption 5.  *See* Memorandum of Points and Authorities, ECF 20-6 ("Memo"), at 5-14.  Plaintiff's objections seem to be based on a belief that if justifications are not long and varied they cannot be sufficient, but the SEC has provided the information courts require.  *See Energy Pol. Advocates v. SEC*, No. 1:22-cv-01497 (TNM), 2023 WL 6976071, at *6 (D.D.C. Oct. 23, 2023) ("[T]he Court has no bias against brevity[.]").

As an initial matter, Plaintiff argues that, for any information to be protected by the deliberative process privilege, the SEC is obligated to identify for each withholding specifically "who was making recommendations to whom" and "whether the 'recommenders' were inside or outside the agency.'" Opp. at 7-8.  Plaintiff, however, identifies no authority that imposes such a requirement on the SEC and cites only irrelevant cases.  *See Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (granting summary judgment to agency that withheld forms containing attorneys' "ideas, strategies, and recommendations" that were "prepared for senior-level review") (internal quotations omitted) (Opp. at 7); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483-84 (2010) (addressing presidential "ability to remove a principal officer," not any issues under FOIA) (Opp. at 8).  *But see Judicial Watch, Inc. v. DOE*, 412 F.3d 125, 131 (D.C. Cir. 2005) (explaining that in evaluating Exemption 5 withholdings "what matters is whether a document will expose the pre-decisional and deliberative processes of the Executive Branch").

### a. The SEC properly withheld information from its correspondence with the White House and other federal government agencies under the deliberative process privilege.

Plaintiff does not argue that the information withheld from correspondence between the SEC, the White House, and other federal government agencies is not deliberative and predecisional.  *See* Opp. at 8-10.  Instead, Plaintiff incorrectly suggests that it is unclear that "the White House is capable of engaging in deliberations within the meaning of Exemption 5 with respect to agencies generally" and that, if the SEC "does not take direction from the White House," the deliberative process privilege cannot apply to communications between the SEC and the White House.  Opp. at 8.  Courts have repeatedly found that communications between federal government agencies and the White House meet the "inter-agency or intra-agency memorandums or letters" requirement of Exemption 5.  *See, e.g.*, *Judicial Watch, Inc. v.*

*Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 10-11 (D.D.C. 2014) (communications between CFPB, an agency under FOIA, and White House staff considered inter-agency or intra-agency memoranda for purposes of Exemption 5); *Cause of Action Inst. v. U.S. Dep't of Commerce*, 513 F. Supp. 3d 116, 125 (D.D.C. 2021) (report prepared by Department of Commerce for the President met "threshold requirement of being an inter-agency or intra-agency memorandum or letter under Exemption 5 of the FOIA"); *Judicial Watch*, 412 F.3d at 129 (deliberations of presidential advisory group could be protected from disclosure under Exemption 5, though group, whose "sole function [was] to advise and assist the President," was "not itself an 'agency' subject to the FOIA").  Plaintiff's argument that deliberations between the SEC and White House would not be privileged because the SEC "exist[s] as an independent agency not subject to the president's direction and control" (Opp. at 8, 11) has no basis in law.  The cases Plaintiff cites say nothing about the FOIA and never suggest that independent agencies cannot or should not engage in deliberations with the White House or that any deliberations that occur would not be protected inter-agency deliberations.  *See Free Enter. Fund*, 561 U.S. at 483-84 (addressing presidential "ability to remove a principal officer," not any issues under FOIA) (Opp. at 8); *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 7 (D.C. Cir. 2016) (addressing whether "CFPB's status as an independent agency headed by a single Director violates Article II of the Constitution," not any issues under FOIA) (Opp. at 8).

Further, contrary to Plaintiff's claim that the SEC "does not describe what type of decisionmaking process [these records] relate to" (Opp. at 10), the *Vaughn* Index describes the decisionmaking processes reflected in those records, including "deliberations about what policy areas to focus on" in meetings and "in ongoing regulatory actions," "the process by which federal agencies proposed to formulate policy," possible executive and agency actions, the

3

"development of climate-related policies," "possible approaches to gathering data to support regulatory matters," and comments on draft policy documents. *See* ECF 20-4. Exemption 5 protects from disclosure this type of internal correspondence among federal government agency staff and the Executive Branch. Memo at 9-12. Plaintiff also objects to redacting the subjects of deliberations (Opp. at 9-10), but Plaintiff provides no legal or logical support for such an objection. Withholding subjects of discussions is appropriate because a "topic of discussion can itself disclose sensitive issues, and contrary to Plaintiff's argument, may include recommendations or express opinions." *Am. Oversight, Inc. v. Dep't of Health & Human Servs.*, No. 17-827(EGS/DAR), 2022 WL 1719001, at *18 (D.D.C. May 27, 2022) (Exemption 5 applied "where the titles or body of a calendar entry would themselves disclose details of agency deliberations"); *see also Wolfe v. Dep't of Health & Human Serv.*, 839 F.2d 768, 775-76 (D.C. Cir. 1988) (agency's "very decision to regulate in a particular area often embodies a sensitive and important policy judgment, sometimes more sensitive and important than the later decisions concerning the precise extent and nature of the regulation").

    In claiming that the SEC's descriptions are too vague, Plaintiff relies on inapposite authority. *ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR), 2007 WL 1020748, at *6 (D.D.C. March 29, 2007) (deliberative process privilege did not apply where "government's submissions fail to specify the deliberative process reflected in these documents") (Opp. at 10); *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 12 (D.D.C. 2004) (agency's "own definition of 'wilderness issues' [did] not specify one agency decision, but rather three (and possibl[y] more) different agency decisions") (Opp. at 10); *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) (agency did "not identify *specific* final decisions or decisionmaking processes to which the documents contributed") (Opp. at 10);

*Elec. Frontier Found. v. U.S. DOJ*, 826 F. Supp. 2d 157, 168-69 (D.D.C. 2011) (descriptions "fail[ed] to identify a specific deliberative process to which the withheld email messages contributed" and role messages played) (Opp. at 10); *FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66, 90 (D.D.C. 2010) (agency "too vaguely described" certain records so court could not determine whether "documents 'discuss the wisdom or merits of a particular agency policy' or 'simply explain and apply established policy'") (Opp. at 10).

### b. The SEC properly withheld information from Chair Gensler's calendar under the deliberative process privilege.

Plaintiff argues that "the SEC has not revealed how the calendar entries, of all items, reflect recommendations or give-and-take" (Opp. at 8, 9), but Plaintiff ignores that the SEC provided descriptive information for the seven entries from Chair Gensler's calendar that were redacted in part (ECF 20-5). The withheld information pertains to proposed SEC climate-related rulemaking, and the *Vaughn* Index divides the withheld calendar entries into two categories and explains the "give-and-take" process present in both categories. *See* ECF 20-5, Entry 1 (email thread in calendar entry "reflects deliberations, proposals, and analysis about language in and edits to a draft of SEC climate-related rules" prior to rules' release), Entry 2 (calendar entries "reflect particular aspects of and language in SEC climate rules that SEC staff were discussing," including "what particular issues related to the climate rulemaking the Chair and his staff should focus on as well as what matters the Chair may have been concerned about or needed more information about at particular times" prior to rules' release). The *Vaughn* Index entries show that the records reflect deliberations about the SEC staff's development of the SEC's climate rules, including possible language to include and the identification of issues that needed examination. *See* ECF 20-5.

Plaintiff presents no evidence that the calendar entries at issue are "trivial," "peripheral to

actual policy formulation," "appl[ications] of existing policy to newly arising facts," or "internal evaluations of agency policy."  Opp. at 9.  Rather, as described in the *Vaughn* Index, the withheld language reflects SEC staff's deliberations relating to the formulation of climate-related policy prior to the announcements of the proposed rules in March and May 2022.  *See* ECF 20-5.

Plaintiff also repeatedly speculates that the SEC "is withholding what is largely and inherently purely factual information in calendar entries."  *See* Opp. at 1, 2, 6-7; *see also* "Plaintiff's Response to Defendant's Statement of Undisputed Facts" (ECF 21-1) ("Counter Statement") at ¶¶20, 22, 25.  Plaintiff, however, provides no evidence that the withheld information is purely factual, and "courts have allowed agencies to withhold factual information that is 'inextricably intertwined' with deliberative material."  *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 203 (D.D.C. Oct. 5, 2007), *report and recommendation adopted*, 520 F. Supp. 2d 194 (D.D.C. Nov. 8, 2007).  In addition, the SEC "enjoy[s] 'a presumption that they complied with the obligation to disclose reasonably segregable material.'"  *Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084, at *6 (D.D.C. May 22, 2018).[1]

In arguing that the calendar entries are not deliberative, Plaintiff relies on cases that are inapposite and/or support the granting of summary judgment to the agency.  *See Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1244, 1250 (4th Cir. 1994) (agency withheld all contested records in full and did not identify authors or recipients of records and did not identify their "relationships to the decisionmaking process") (Opp. at 9); *Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C. Cir. 1975) (reports at issue were "'final objective analyses of agency performance under existing

---

[1] Plaintiff recognizes that the SEC released non-exempt information.  *See, e.g.*, Counter Statement ¶21 (noting that SEC withheld "one or maximum two words (approximately 15 letters/spaces) out of" one calendar entry).

policy'") (Opp. at 9); *Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998, at

*5 (4th Cir. 1997) (report at issue was "final," "seemingly entirely factual in character," and

"prepared with the expectation that it would be shared with the very party from whom the

government now attempts to withhold the document") (Opp. at 9); *Citizens for Resp. & Ethics in

Wash. v. U.S. DOJ*, 45 F.4th 963, 977, 979 (D.C. Cir. 2022) (emphasizing "unique circumstances

of" case in which agency "[sought] to rely on a new legal theory justifying [Exemption 5]

withholding" that it "never presented to the district court") (Opp. at 9, 10); *U.S. Fish & Wildlife

Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 788 (2021) (concluding that "deliberative process

privilege protects the [agency's] draft biological opinions from disclosure because they are both

predecisional and deliberative") (Opp. at 10).

> **2. The SEC has not waived protection of withheld information in
> correspondence with the White House.**

Plaintiff argues that "the SEC voluntarily waived the protection of Exemption 5 by

sharing the underlying documents with the White House." Opp. at 11-12. "Exemption 5

explicitly applies to inter as well as intra-agency memoranda and letters. Thus an agency will not

automatically waive the exemption by releasing memoranda to other agencies." *Chilivis v. SEC*,

673 F.2d 1205, 1211-12 (11th Cir. 1982). As discussed above, correspondence between the

White House and a federal government agency like the SEC is considered inter-agency. *See

supra* at II.A.1.a; *see also* Memo at 8-9. There is no evidence that the SEC shared the withheld

information with anyone other than SEC staff, Executive Branch staff, and other federal

government agencies' staff.

None of Plaintiff's cited cases address waiver or involve correspondence between the

White House and federal government agencies. *See Dep't of Interior v. Klamath Water Users

Protective Ass'n*, 532 U.S. 1, 4, 11 (2001) (waiver not at issue but rather whether records were

exempt from disclosure pursuant to consultant corollary to Exemption 5) (Opp. at 11); *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28, 41-42 (D.D.C. 2007) (declining to address Plaintiff's waiver arguments and noting that agency admitted to not disclosing all parties to withheld communications) (Opp. at 11); *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120, 134-35 (D.D.C. 2016) (waiver not at issue and concluding pursuant to consultant corollary doctrine that records between White House Office of Science & Technology Policy and professor whose opinion agency sought were not intra-agency because professor "had a professional and reputational stake in [agency's] decision"), *modified*, 185 F. Supp. 3d 26 (D.D.C. 2016) (Opp. at 11-12).[2]

### 3. The SEC's *Vaughn* Indices sufficiently describe the information withheld under the deliberative process privilege.

Plaintiff complains that the SEC's *Vaughn* Indices are insufficiently detailed and are repetitive (Opp. at 6-7, 12-15) but ignores the descriptive information provided for the SEC's withholdings. Notably, Plaintiff focuses on the *Vaughn* Index for withholdings from Chair Gensler's calendar entries. *See, e.g.*, Opp. at 12 (referring to only one "*Vaughn* Index" and citing only to ECF 20-5, the Index addressing Chair Gensler's calendar entries); Opp. at 13 (referring

---

[2] In addition to arguing that disclosure to the White House waives privileges, Plaintiff states that "[t]o show communications are 'intra-agency' or 'inter-agency' for purposes of FOIA, and thus potentially privileged under Exemption 5, an agency must list the 'names and affiliations of all senders and recipients.'" Opp. at 11 (quoting *People for the Am. Way Found.*, 516 F. Supp. 2d at 41-42). The case Plaintiff relies on, however, addresses the specific issues in that case and does not establish a blanket requirement that *Vaughn* Indices must always list the names and affiliations of all senders and recipients. *See People for the Am. Way Found.*, 516 F. Supp. 2d at 34, 41-42 (noting "[t]here is no set formula for a *Vaughn* index" and requiring agency to re-submit *Vaughn* index with names and affiliations of senders and recipients because "*Vaughn* index did not include all parties to each communication"). In this case, Plaintiff has not contended that the SEC has insufficiently identified senders and recipients, and the SEC's *Vaughn* Indices provide sufficient information to show that all the documents at issue are either intra- or inter-agency.

to "subject matters of meetings" in "calendars"); *see also* Counter Statement ¶¶19, 21 (criticizing *Vaughn* Index addressing withholdings from Chair Gensler's calendar).

As described in the *Vaughn* Indices, the withheld information pertains to (1) discussion between SEC staff, White House staff, and other federal government agencies about, among other things, potential areas of focus at policy meetings, development of policies, SEC proposed action and analysis, policy committees' meeting discussions and materials, and draft documents (*see* ECF 20-3 at ¶11; ECF 20-4) and (2) discussion among SEC staff relating to SEC climate rulemaking (*see* ECF 20-3 at ¶18; ECF 20-5). The *Vaughn* Indices identify the parties to the inter-agency communications as "White House staff," the "SEC Chair," "SEC staff," "federal agencies' staff," "Treasury Department staff," and "State Department staff." *See* ECF 20-4; ECF 20-5.

Plaintiff complains that the SEC's submissions provide "only the general topics of purported deliberations" (Opp. at 13-14) but fail to recognize the detailed information in the *Vaughn* Indices. Deliberations in the correspondence between the White House, the SEC, and other agencies include, among other things, potential areas of focus at policy meetings (ECF 20-4 at Entries 1, 23), development of the policies and future actions (Entries 2, 4, 24), SEC proposed action and analysis (Entries 3, 8, 29, 30), policy committees' meeting discussions and materials concerning still-developing policymaking (Entries 5-7, 10, 12-22, 25-28), and comment on draft documents (Entry 9, 11). Similarly, deliberations in Chair Gensler's calendar entries center on what language should be included and edited in a draft of SEC climate-related rules and what specific issues related to climate rulemaking the Chair and his staff should focus on. ECF 20-5. Providing any additional detail about the records would expose inter-agency

deliberations about Executive Branch policies and SEC staff's deliberations about the proposed climate-rulemaking.  *See* ECF 20-3 at ¶¶13-17, 19-22.

Plaintiff also objects that the SEC's explanations are "repetitive" and that the SEC included "numerous documents . . . in a single category of the same *Vaughn* entry," specifically at ECF 20-5.  Opp. at 12.  The existence of similar explanations simply reflects that the SEC is withholding closely related documents, and the documents that the SEC put in a single category are all calendar entries about proposed climate-related rulemaking, so the same rationale applies to each entry.  Courts have recognized that *Vaughn* indices often have good reason to have repetitive language and that categorical entries are appropriate.  *See Energy Pol. Advocates*, 2023 WL 6976071, at *5 ("If the Commission's descriptions here are repetitive, it is because the withheld messages relate to the same climate-related rulemakings."); *Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 35, 73 (D.D.C. 2022) (approving *Vaughn* index where "many [] entries contain the same language . . . because many of the withheld documents are similar"); *Lawyers' Comm. for C.R. v. OMB*, No. 18-645 (EGS), 2023 WL 3433978, at *5 (D.D.C. May 12, 2023) ("a Vaughn index is not inadequate simply because an agency grouped similar documents into a single category and provided the same reason for withholding information across that category").

Plaintiff's argument about the *Vaughn* Indices boils down to being little more than a repetition of its earlier argument that the withheld records are not covered by the deliberative process privilege.  Opp. at 14-15.  As previously explained (see *supra* at II.A.1), the SEC has appropriately withheld these records under Exemption 5.  Further, the cases Plaintiff cited are inapposite and distinguishable. *See Elkem Metals Co. v. United States*, 24 Ct. Int'l Trade 1395, 1401-02 (2000) (ordering release of schedules because dates "were incorporated into the final published schedule[s]" and "disclosure would not reveal [agency] deliberations") (Opp. at 14);

*Hennessey*, 1997 WL 537998, at *5 (report at issue was "final," "seemingly entirely factual in character," and "prepared with the expectation that it would be shared with the very party from whom the government now attempts to withhold the document") (Opp. at 9, 14); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 868 (D.C. Cir. 1980) (deliberative process privilege did not apply to memoranda that were "simply straightforward explanations of agency regulations in specific factual situations . . . [and] more akin to a 'resource' opinion about the applicability of existing policy to a certain state of facts") (Opp. at 15); *see supra* at 4-5 (discussing Plaintiff's cases cited at Opp. 10 and 15).

Because the SEC's *Vaughn* Indices "contain an adequate description of the records and a plain statement of the exemptions relied upon," it has satisfied its obligations under the FOIA. *Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910, at *5 (D.D.C. Sept. 28, 2021) (internal quotations omitted).

### 4. The SEC sufficiently demonstrated the foreseeable harm that would necessarily occur should the withheld records be released.

Plaintiff maintains that the SEC only "makes general statements" and has not "even analyze[d foreseeable harm] with reference to this particular case and the particular documents at issue." Opp. at 15-19.[3] But Plaintiff ignores the detail provided in the Tallarico Declaration about the foreseeable harm that would arise should the SEC release these specific records.

An agency should "provide a 'focused and concrete demonstration of why disclosure of the particular type of material' will cause foreseeable harm 'in the specific context of the agency action at issue[,]'" arguing "that disclosure *would* have that effect in context." *Energy Pol.*

---

[3] Plaintiff uses its Counter Statement to make the same complaints about the SEC's explanations of foreseeable harm, but Plaintiff fails to provide any authority for its positions. *See* ECF 21-1 at ¶¶12, 14, 15, 16, 19.

*Advocates v. U.S. Dep't of State*, No. 1:19-CV-03307 (TNM), 2023 WL 4198200, at *3 (D.D.C. June 27, 2023) (emphasis in original). "But even without enough explanation from the agency, the 'context and purpose' of withheld information can support a finding of foreseeable harm." *Id*.

The SEC's declaration satisfies the foreseeable harm requirement, as it explains the chilling effect of disclosure. ECF 20-3 at ¶13 (disclosure of SEC-Executive Branch correspondence "would disrupt coordination between the White House and federal government agencies as they formulate Executive Branch policies and explore possible regulatory and executive actions"), ¶14 (release "would slow down the policy development process because staff would be less likely to share their thoughts in email and other communications, have less ability to prepare for meetings, and receive fewer updates making sure staff across the Executive Branch had the same information and feedback"), ¶16 ("quality of the policymaking process would be damaged if SEC, White House, and other federal agency staff cannot focus solely on providing comprehensive and candid information, but rather must evaluate advice and information through the lens of potential public release"), ¶17 (release "would deter future willingness among SEC and White House staff to share ideas, recommendations, and preliminary thoughts on issues and matters before them"), ¶19 (release of Chair Gensler's calendar records would force SEC staff to "limit the information they include in calendar entries," which "would make it more difficult for staff, including the Chair, to keep track of and prepare for meetings" and "would also impede efficient coordination between SEC staff on rulemaking and other agency initiatives"), ¶20 (release of information about draft climate rules "would chill discussions regarding future SEC proposed rulemaking" and "would make rulemaking less efficient and effective as it would likely prevent robust discussions among SEC staff in

discussing and developing proposed rules").  Courts have found that similar declaration language adequately explained foreseeable harm.  *See, e.g.*, *Machado Amadis*, 971 F.3d at 371 (agency "affidavit adequately explained that full disclosure of [records] would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals'"); *Lawyers' Comm.*, 2023 WL 3433978, at *9-10 (finding declaration sufficient that stated, among other things, "disclosure 'would prompt [office] staff to be less candid' or perhaps not meaningfully participate in the deliberative process, which in turn would 'seriously harm [office's] ability to function" and also "would inhibit [office's] ability to have frank and open discussions on policy matters with other parts of the Executive Branch").

The SEC's declaration further notes the risk of public confusion should the withheld records be released.  ECF 20-3 at ¶¶15-16 (release of SEC-Executive Branch correspondence could "confuse the public by suggesting that proposals, views, and approaches that were dismissed or changed during the policy development process are still relevant" and "would mislead the public, who may incorrectly base their expectations of White House action on still-developing policy"), ¶21 (release of Chair's calendars "would cause public confusion and speculation regarding the final [rule] release" as public "may draw various assumptions [from non-final information] inconsistent with final agency statements").  Indeed, "the D.C. Circuit has 'long recognized that the risk of public confusion has a special force with respect to disclosures of agency positions or reasoning concerning proposed *policies*.'"  *Energy Pol. Advocates*, 2023 WL 4198200, at *4 (emphasis in original) ("All of the redacted documents discuss subordinates' thoughts and analysis on proposed policies for decision-makers to review. Releasing such inchoate material could certainly mislead and foreseeably harm the agency's processes.")

(internal citation omitted); *Lawyers' Comm.*, 2023 WL 3433978, at *10-11 (concluding that agency sufficiently explained "how release of the documents [at issue] . . . would cause [public confusion]" when declarant stated, inter alia, that "release of the draft documents . . . would cause public confusion because those documents contain arguments for and against certain text as well as changes, comments, and edits").

As such, the SEC has met its burden and adequately linked the harm of release of the SEC's inter- and intra-agency discussions to the specific information withheld here.

Plaintiff complains that the SEC does not address foreseeable harm in the *Vaughn* Indices or the Hyde-Michaels Declaration (Opp. at 16-17) but fails to show that the SEC is required to do so when the Tallarico Declaration addresses foreseeable harm.  *See Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *2 (D.D.C. Nov. 21, 2022) (agency may rely on *Vaughn* index, declarations, or both in support of summary judgment); *Keeping Gov't Beholden, Inc. v. U.S. DOJ*, No. CV 17-1569, 2021 WL 5918627, at *11 (D.D.C. Dec. 13, 2021), *aff'd sub nom*. *Brody v. U.S. DOJ*, No. 22-5043, 2023 WL 1511679 (D.C. Cir. Feb. 3, 2023) ("the *Vaughn* index must be considered in conjunction with [the agency's] supplemental declaration"). Similarly, Plaintiff notes that the SEC did not make a "calculation of public benefit from disclosure" but provides no support for a finding that the SEC is required to do so.  *See* Opp. at 17.  Such a requirement is not in the FOIA.  *See* 5 U.S.C. § 552(a)(8)(A)(i) (stating the foreseeable harm requirement without requiring any balancing of harm and public interest). Plaintiff also notes that "[e]mbarrassment is not an exemption to FOIA" (Opp. at 17) without providing any reason to believe the SEC is withholding facts that might be embarrassing. Finally, Plaintiff states the SEC's "interactions with the White House" could provide the public assurances that the SEC's Commissioners "perform their own checks and balances" without any

explanation of how this vague statement relates to what the SEC can withhold under the FOIA. *See* Opp. at 17.  The information withheld from correspondence between the SEC and the White House concerns non-public, pre-decisional policymaking, and effective inter-agency policymaking requires open dialogue among staff without fear of premature public release.  *See* ECF 20-3 at ¶¶13-14, 17.

Finally, Plaintiff relies on cases that are distinguishable from the circumstances here.  *See Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370-72 (D.C. Cir. 2021) (unlike here where records are deliberative and consist of inter-agency correspondence and calendar entries about intra-agency deliberations, foreseeability of harm standard not met in connection with, among others, records containing "purely factual material" and where declarations did not specify harm relating to each different kind of record) (Opp. at 16, 18); *Project on Gov't Oversight v. DHS*, No. l:18- CV-2051-RCL, 2023 WL 2139380, at *9-10 (D.D.C. Feb. 21, 2023) (declarations there did not specifically articulate why disclosure of records would chill deliberations or create public confusion) (Opp. at 18-19).[4]

---

[4] Plaintiff attempts to draw similarities between the SEC's declaration in this case and the SEC's declaration in another FOIA litigation because in both declarations the word "harm" appears the same number of times. *See* Opp. at 16 n.3.  Plaintiff ignores that the substantive explanations of foreseeable harm in this case and in the *NCLA* case are different.  *See NCLA v. SEC*, 1:22-cv-03567-CJN (D.D.C.) ("NCLA") (ECF 16-3).  In *NCLA*, the declarant addressed, among other things, the harms of disclosing attorney work-product protected language (noting that disclosure "would deprive the SEC of its ability to withhold any information in future litigation" and "would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation").  NCLA, ECF 16-3 at ¶14.  The *NCLA* declarant also attested to the effect of disclosure on an ongoing internal investigation involving providing advice to SEC leadership, a situation which is factually dissimilar to the records here.  *See id*. at ¶15.  Some overlap in language and rationale does not prove that the SEC has not separately analyzed the harm for all the different categories of documents in the two cases.

### B.   No material facts are in dispute.

Plaintiff's Counter Statement, which Plaintiff does not mention anywhere in its Opposition, does not raise any genuine dispute of material fact sufficient to defeat summary judgment.[5]   Plaintiff purports to object to several SEC statements on various bases, but Plaintiff did not point to any legal authority for its positions beyond bald citations to the Federal Rules of Civil Procedure.

Plaintiff's objections are meritless.   First, Plaintiff objects that certain statements were "not within the competence of any declarant" and that information is "necessarily based upon hearsay not within the personal knowledge of" the declarant.   Counter Statement ¶¶7, 8, 12, 19, 20, 24, 25.   The SEC's supporting declarations include details about the declarants' roles, why they would be knowledgeable about the FOIA Office's releases of records in response to Plaintiff's FOIA requests, and why they would be familiar with contents of the released records. *See* ECF 20-2 at ¶¶1-2 (stating that that "[a]s a FOIA Branch Chief," she is "responsible for, among other things, coordinating and processing FOIA requests, organizing searches for documents responsive to FOIA requests, making determinations as to whether requested information is exempt from disclosure under FOIA, and communicating with FOIA requesters" and "relied on my personal knowledge, or where my personal knowledge was lacking or incomplete, I have relied on my review of records routinely maintained in the ordinary course of business or representations made to me by other SEC staff"); *id* at ¶3 (stating that "[a]s the FOIA Branch Chief who supervised the FOIA Office research specialists to whom [Plaintiff's FOIA requests] were assigned, I oversaw the processing of Plaintiff's two FOIA requests"); ECF 20-3

---

[5] Despite its myriad objections, Plaintiff agrees that summary judgment is appropriate in this case.  *See* Opp. at 2 ("This case fits the mold that 'FOIA cases typically and appropriately are decided on motions for summary judgment.'").

at ¶1 (stating he is "familiar with the SEC's procedures for responding to and searching for documents responsive to FOIA requests"); *id.* at ¶4 (stating "I am familiar . . . with the records released to Plaintiff in connection with its FOIA requests").  Indeed, "it is well settled that 'FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.'"  *Hainey v. U.S. Dep't of Interior*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013); *Ecological Rights Found. v. U.S. EPA*, 541 F. Supp. 3d 34, 46-50 (D.D.C. 2021) ("in [the D.C.] Circuit, agency declarants' testimony based on information obtained in the course of their official duties or from review of agency records is routinely considered when evaluating an agency's invocation of FOIA exemptions").

Plaintiff repeatedly complains that the declarant has no personal knowledge about the harm that would occur should withheld information be released (Counter Statement ¶¶12, 22, 23, 25) and, similarly, that the declarant does not have personal knowledge of White House interests (*id.* at ¶¶15, 17, 18).  The Tallarico Declaration states, however, that statements in the declaration "are based on my review of the official files and records of the SEC maintained routinely in the ordinary course of business, my own personal knowledge, information I acquired through the performance of my official duties or from other SEC staff, and review of the records at issue, and information provided to me by others within the SEC and the Executive Branch with knowledge of the records at issue in this case."  *See* ECF 20-3 at ¶3.  Courts have found that a declarant may base their statements on information provided by their own agency's staff as well as staff from other agencies.  *See Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 510-11 (D.D.C. 2015) (determining that agency met its burden by providing declaration reflecting "information obtained through consultation with other agencies"); *Humane Soc'y of the United States v.*

*Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) ("FOIA declarants may rely on information obtained through inter-agency consultation"); Memo at 5-6.

Additionally, Plaintiff argues that the declarant did not include "analysis the agency may have undertaken into any alleged harm from release" including the benefit from that release (Counter Statement ¶¶12, 14, 19), but Plaintiff provides no authority requiring the SEC to provide such "analysis" and ignores the significant explanations of foreseeable harm present in the Tallarico Declaration.  *See supra* at II.A.4.  Plaintiff also questions with no basis whether the SEC properly conducted a segregability analysis (Counter Statement ¶¶12, 24), but the SEC "enjoy[s] 'a presumption that they complied with the obligation to disclose reasonably segregable material'" (*Elec. Privacy Info. Ctr.*, 2018 WL 2324084, at *6).

Plaintiff also insists "that it has never waived its entitlement to attorney's fees" (Counter Statement ¶11), but that issue is not relevant to this motion for summary judgment which seeks resolution only of the appropriateness of the SEC's Exemption 5 withholdings from certain records (ECF 18 at 2).

Finally, Plaintiff repeats legal arguments that it makes in its opposition, which are addressed above.  *See, e.g.*, Counter Statement ¶¶6-8, 20, 22 (questioning "validity" and applicability of FOIA exemptions to withheld records), ¶¶14, 16 (questioning sufficiency of SEC's declarations), ¶19 (objecting to *Vaughn* index). [6]

---

[6] With respect to Counter Statement ¶21, Plaintiff confuses the internal SEC email thread contained in a calendar entry described in Entry 1 of ECF 20-5, which appears in Plaintiff's exhibits (*see* ECF 21-2 at 2-3, ECF 21-4 at 3-4), with the calendar entry for August 4, 2021 described in Entry 2 of ECF 20-5, which also appears in Plaintiff's exhibits (*see* ECF 21-2 at 1, ECF 21-4 at 2).  Any difference between descriptions in the preliminary *Vaughn* Index that the SEC provided Plaintiff for discussion purposes only and the *Vaughn* Index provided in this briefing stems from the parties' narrowing the disputed records and the SEC's providing more particularized detail about the withheld information herein.  *See* ECF 20-1 at ¶9.

III.     **<u>CONCLUSION</u>**

For the foregoing reasons, and the reasons described in its opening papers, the SEC

respectfully requests that the Court grant the SEC's motion for summary judgment.

Dated:  November 28, 2023                              Respectfully submitted,

                                                       <u>/s/ *Alexandra Verdi*   </u>
                                                       Alexandra Verdi (NY Reg. No. 5480934)
                                                       Office of the General Counsel
                                                       U.S. Securities and Exchange Commission
                                                       100 F Street, NE
                                                       Washington, D.C. 20549
                                                       Telephone: (202) 551-5057
                                                       Fax: (202) 772-9263
                                                       verdim@sec.gov

                                                       *Counsel for Defendant*
                                                       *U.S. Securities and Exchange Commission*